IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MADLEN SIMMS, | ) | CV. NO. 09-00295 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY HEALTH | ) | |
| ALLIANCE; and DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING UHA'S MOTION FOR SUMMARY JUDGMENT AND
STRIKING PLAINTIFF'S UNAUTHORIZED SUPPLEMENTAL BRIEFING

On April 26, 2010, the Court heard UHA's Motion for Summary

Judgment. Gregory Kugle, Esq., and John Saur, Esq., (via telephone), appeared at

the hearing on behalf of Plaintiff; Dianne Brookins, Esq., appeared at the hearing

on behalf of UHA. After reviewing the motion and the supporting and opposing

memoranda, the Court **GRANTS** UHA's Motion. (Doc. # 42.) The Court further

**STRIKES** Plaintiff's unauthorized supplemental briefing. (Doc. # 46.)

BACKGROUND

This action concerns health insurance reimbursement for the costs of a

septoplasty surgery performed on Plaintiff Madlen Simms by Dr. Rollin Daniel at

the Newport Beach Surgery Center in Orange County, California. Plaintiff

apparently went to see Dr. Daniel on the advice of another doctor, Dr. Larry

Schlesinger, during a seminar in Hawai`i in January 2004.  (Doc. # 1 at 15.)

It is undisputed that Plaintiff maintained a health insurance policy

("the Policy") issued by Defendant University Health Alliance ("UHA").  UHA

had a contractual relationship with CCN Network, which in turn had a contractual

relationship with Newport Beach Surgery Center.  (Id.)  Plaintiff asserts that the

Surgery Center "agreed to accept predetermined payments for medical services

provided to UHA's insureds."  (Id.)

According to Plaintiff, several months prior to seeing Dr. Daniel,

Plaintiff called UHA and spoke with someone named Mark.  This individual

purportedly informed Plaintiff that Dr. Daniel was an approved physician "in-

network."[1]  (Id. at 16.)

Plaintiff was subsequently examined by Dr. Daniel on March 30, 2004

for a surgery to be performed on April 9, 2004.  Between the examination and the

surgery, Dr. Daniel's office faxed a "Request for Authorization" form to UHA on

one or two occasions.  On April 9, 2004, UHA faxed a responsive letter to Dr.

---

[1] At the hearing, the Court questioned defense and plaintiff counsel on this matter.  The parties concurred that Plaintiff had been informed that Dr. Daniel was in the CCN network, which results in payment at Non-Participating Provider rates if the patient receives routine services.  This phone call is therefore not directly relevant to the questions before this Court.

Daniel's office.  This letter contained the statement "Pending review of medical necessity with referring physician and availability of requested procedure in the service area of Hawaii."  Plaintiff interprets this statement to mean that the surgery was authorized so long as it was medically necessary and unavailable in Hawai`i.  Prior and subsequent communications between UHA and Plaintiff or Dr. Daniel are subject to some dispute in this case.

The surgery was performed that day on April 9, 2004.  The surgery involved a rib graft to Plaintiff's nose and an ear cartilage graft to her nose.  Plaintiff paid a deposit to the Surgery Center, deposits on hotel accommodations, post operative assistance, and out of pocket travel expenses.  (<u>Id.</u> at 17.)

On April 13, 2004, UHA sent a letter to Plaintiff and Dr. Daniel denying Plaintiff's request for septoplasty.  The letter stated that the procedure was "not a covered benefit.  Cosmetic procedures also not a covered benefit.  This decision is based on the medical necessity of the service."  (<u>Id.</u> at 18.)  Prior authorization was denied.  (<u>Id.</u>)

Plaintiff, represented by counsel, appealed UHA's denial of authorization on June 10, 2004.  UHA's Appeals Committee denied the appeal on July 12, 2004.  (Doc. # 42 Ex. I.)  Plaintiff continued to contest the Appeals Committee's decision, and after multiple correspondences between Plaintiff and

3

UHA, Plaintiff was ultimately reimbursed two lump sums of $1,312.84 and $2,592.00.  (Doc. # 42 Ex. L, R.)  UHA paid Plaintiff's claim based on its established 80% rate of the eligible charge for Non-Participating Providers, due to Plaintiff's alleged failure to timely obtain prior authorization.  (Doc. # 42 Ex. L.)

On June 2, 2008, Plaintiff filed a Complaint in the Superior Court of the State of California.  (Doc. # 1 at 13-23.)  UHA removed the action to the Central District of California, Southern Division, because the claims asserted by Plaintiff arose under the Employee Retirement Income Security Act, 28 U.S.C. § 1001, et seq., ("ERISA").  On August 11, 2008, the parties stipulated to transferring the case from the Central District of California to this Court.  (Doc. # 14.)

The Complaint raises two causes of action.  Count I is a breach of contract claim against UHA, whereby UHA allegedly breached the Policy by failing and refusing to pay the insurance benefits due and owing to Plaintiff.  (Doc. # 1 at 21.)  Count II claims breach of implied covenant of good faith and fair dealing, based on UHA's failure to provide insurance benefits to Plaintiff to which she is entitled.  (Id. at 21-22.)

On October 13, 2009, the parties submitted a stipulation as to Plaintiff's claims ("the Stipulation").  (Doc. # 41.)  Pursuant to the Stipulation, the

parties agreed, inter alia, that: (1) Plaintiff is seeking benefits under an employer-provided health plan subject to ERISA; (2) the claims in the Complaint are deemed to be solely a claim for benefits allegedly due under an ERISA plan pursuant to 29 U.S.C. § 1132(a)(1); and (3) Plaintiff stipulates to dismissal with prejudice of her claims for extra-contractual relief, including "general damages, including anxiety and emotional distress" and "punitive and exemplary damages."

On February 10, 2010, UHA filed the instant Motion for Summary Judgment.  (Doc. # 42.)  UHA argues that UHA paid Plaintiff all benefits to which she is entitled under her health plan and that UHA did not abuse its discretion in deciding Plaintiff's claims for benefits.

On April 8, 2010, Plaintiff filed her Opposition.[2]  (Doc. # 45.) Plaintiff separately filed a Response to Defendant's Separate Statement of Facts. (Doc. # 47.)  Plaintiff further filed an Objection to Admissibility of Defendant's Exhibits as Business Records.[3]  (Doc. # 49.)

_____

[2] The Court notes that Plaintiff's opposition was filed untimely.  The Court, in its discretion and pursuant to Local Rule 7.4, will nevertheless consider Plaintiff's arguments.

[3] Plaintiff's objections are without merit and the UHA's exhibits will be considered by this Court.  First, as UHA notes, Plaintiff does not actually dispute the truth of these documents, and in fact Plaintiff relies on these very exhibits in her Opposition.  Second, these exhibits are authenticated by the testimony of

(continued...)

Defendant filed a Reply on April 12, 2010.  (Doc. # 50.)

STANDARD OF REVIEW

A court reviews a denial of benefits allegedly due under a plan governed by the Employee Retirement Income Security Act of 1973, 29 U.S.C. § 1001 et seq., de novo, unless the benefit plan itself gives the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms.  Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009).  When the benefit plan grants the administrator discretionary authority, the court reviews the administrator's decision for abuse of discretion.  Id.; see Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 866 (9th Cir. 2008).

A court may only apply the traditional abuse of discretion standard, however, if the plan administrator does not have a conflict of interest.  Montour, 588 F.3d at 629; see Sznewajs v. U.S. Bancorp Amended & Restated Supplemental Benefits Plan, 572 F.3d 727, 732 (9th Cir. 2009).  When there is no conflict of interest, the administrator's plan "can be upheld if it is 'grounded on any

---

[3](...continued)
Howard Lee, Chief Operating Officer and Executive Vice President of UHA.  He attests that the records were kept in the course of UHA's regularly conducted business activities, thus satisfying Federal Rules of Evidence Rule 803.

reasonable basis.'" Montour, 588 F.3d at 629 (quoting Sznewajs, 572 F.3d at 734-35).

A "more complex application of the of the abuse of discretion standard" must be applied when the administrator of the insurance policy governed by ERISA has a "structural conflict of interest" in its position as both administrator and as the payor of benefits. Id. at 629-30. This structural conflict of interest arises from the fact that "the same entity that funds an ERISA benefits plan also evaluates claims." Id. at 630. A "reviewing court must take into account the conflict." Id. at 626. "[A] modicum of evidence in the record supporting the administrator's decision will not alone suffice in the face of such a conflict, since this more traditional application of the abuse of discretion standard allows no room for weighing the extent to which the administrator's decision may have been motivated by improper considerations." Id.; see Metro. Life Ins. Co. v. Glenn, — U.S. —, 128 S. Ct. 2343, 2346, 2348 (2008).

When presented with a case involving a structural conflict of interest, a court must consider case-specific factors, and must "reach a decision as to whether discretion has been abused by weighing and balancing those factors together." Montour, 588 F.3d at 630. The factors include the administrator's conflict of interest, the quality and quantity of medical evidence, whether the

claimant had an in-person medical evaluation, and whether there were independent experts involved.  Id.  A court may also consider whether the administrator rendered a decision without an explanation, relies on clearly erroneous findings of fact, or whether the administrator construes provisions in a way that conflicts with the plain language of the plan.  Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1178 (9th Cir. 2005).  The weight to be given to the conflict factor is adjusted on a case-by-case basis "based on the degree to which the conflict appears improperly to have influenced a plan administrator's decision." Montour, 588 F.3d at 631 (citing Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 968 (9th Cir. 2006); Nolan v. Heald Coll., 551 F.3d 1148, 1153-54 (9th Cir. 2009); Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 867-68 (9th Cir. 2008)).

Moreover, "[j]udicial review of an ERISA plan administrator's decision on the merits is limited to the administrative record, . . . [which] consists 'of the papers the insurer had when it denied the claim.'"  Montour, 588 F.3d at 632 & n.4 (citations omitted).  When ruling on the merits, a court may generally not hear additional evidence not presented to the plan administrator.  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006).

Any evidence of bias not part of the administrative record must be considered according to the traditional rules of summary judgment. Nolan v. Heald Coll., 551 F.3d 1148, 1155 (9th Cir. 2009). The outside evidence will only be used "to determine the precise contours of the abuse of discretion standard" that should be applied in the present case. Id. at 1154. If the evidence indicates that a "conflict may have tainted the entire administrative decision making process, the court should review the administrator's stated bases for its decision with enhanced skepticism: this is functionally equivalent to assigning greater weight to the conflict of interest as a factor in the overall analysis of whether an abuse of discretion occurred." Montour, 588 F.3d at 631. Decisions on the merits, however, must rest on the administrative record alone.

When the decision to grant or deny ERISA benefits is reviewed for abuse of discretion and the court's review is limited to the administrative record, a motion for summary judgment is merely the vehicle through which a party seeks judgment. The "usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999), abrogated on other grounds by Abatie, 458 F.3d at 968; see Nolan, 551 F.3d at 1154.

## DISCUSSION

I.   Order Striking Unauthorized Supplemental Briefing

As a preliminary matter, the Court notes that Plaintiff filed a supplemental concise statement of facts ("CSOF") without leave of Court. Plaintiff filed this "Concise Statement of Facts in Opposition to Defendant's Motion for Summary Judgment" in addition to a separate "Response to Defendant's Separate Statement of Facts."  Local Rule 56.1(b) requires that the opposing party file a single concise statement that "admits or disputes the facts set forth in the moving party's concise statement, as well as sets forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." Plaintiff's "Concise Statement," despite being labeled such, is not actually a CSOF in opposition to UHA's CSOF.  The "Concise Statement" submits only new factual assertions derived from Plaintiff's own declaration and does not respond to Defendant's CSOF at all.  Such briefing is unauthorized and not in compliance with Local Rule 56.1.  Plaintiff's "Response," however, complies with Local Rule 56.1 and directly addresses those facts asserted in UHA's CSOF.

Accordingly, the Court STRIKES Plaintiff's Concise Statement of Facts as nonconforming with Local Rule 56.1.  The Court construes Plaintiff's "Response" to be Plaintiff's appropriately filed CSOF in opposition.

10

II.     Relevant Plan Provisions & Correspondence

      Plaintiff enrolled in a UHA health plan issued to employer Wyland Worldwide LLC effective January 1, 2003, until her employment with Wyland terminated in April 2003.  (UHA CSOF ¶ 2; CSOF Ex. A; Pl. Resp. ¶ 2.)  Plaintiff elected COBRA coverage for eighteen months under the group health plan.  (UHA CSOF ¶ 3; CSOF Ex. B; Pl. Resp. ¶ 3.)

      The Medical Benefits Guide ("MBG") is the applicable plan document, and it informs members of their rights and obligations under the plan.  The MBG requires prior authorization for "non-emergency or non-urgent services outside Hawaii."  (UHA CSOF ¶ 24; CSOF Ex. W at 41.)  The MBG explicitly states that if someone wishes to receive a service involving non-emergency or non-urgent services outside Hawaii, that person is required to call UHA "at least 2 weeks in advance."  (UHA CSOF Ex. W at 41.)  The MBG also explicitly states that the penalty for not receiving pre-authorization is payment only at the "Non-Participating Provider" rate, if indeed the services meet the payment criteria at all.  (Id.)  If the member travels outside of Hawai`i to receive routine medical services, the benefits are paid out as to a Non-Participating Provider.  (Id. at 3.)  Moreover, the MBG provides that if a member requires medical services not available in Hawai`i, the member's physician should "contact [UHA] for an authorization for a

11

referral to a Non-Participating Provider." (Id.)  In other words, the only way a member traveling outside of Hawai`i may receive benefit payments as from a Participating Provider is for an urgent or an emergency medical service and the member received the services from a contracted mainland provider network.  (Id.) This information is provided clearly on page three of the handbook, in a boxed area in the middle of the page entitled "Services Outside the Service Area."

On page two of the MBG, members are informed that if they visit a non-participating doctor or facility, UHA will pay 80% of the eligible charge.  This information is clearly provided in boxed-text entitled "Using Non-Participating Providers." (Id. at 2.)  This eligible charge would not exceed the eligible charge for the same services or substantially the same services rendered in Hawai`i.  (Id. at 10.)  Determination of "eligible charge" is based on the lesser of the values between the determined value and the actual charge to the member.  (Id. at 9.)

The MBG also grants the plan administrator discretion in interpreting and applying the terms of the plan.  Page four of the MBG states:

> We will interpret the provisions of this Agreement and determine all questions that arise under it.  Our interpretations and determinations are final and binding to the extent permitted by law.  If you disagree with us, you have the right to appeal (see Section 9: If You Disagree With our Decision).

(UHA CSOF Ex. W. at 4.)

12

Plaintiff does not dispute that UHA is granted discretion to interpret the terms of the Agreement.  (Pl. Resp. ¶ 28.)  Indeed, the terms of the Agreement do confer discretionary authority to UHA, despite the fact that the word "discretion" is not used.  See Abatie, 458 F.3d at 963.

It is currently undisputed that Dr. Daniel and the Surgery Center are Non-Participating Providers.  However, Plaintiff contends that seven months before the surgery, she had called UHA and was told that no prior authorization was required as long as providers are within the network and that Dr. Daniel was in the network.  (Simms Opp'n Decl. ¶ 4.)  There is no record of this phone call except in an internal UHA memo wherein an employee named Dolores references the fact that Plaintiff claimed she had such a call.  (UHA CSOF Ex. F.)

It is also undisputed that Dr. Daniel first requested prior authorization for the April 9, 2004 septoplasty on March 30, 2004, eleven days prior to the scheduled surgery.  (UHA CSOF ¶ 5; CSOF Ex. C; Pl. Resp. ¶ 5.)  Although Plaintiff avers that the surgery was a medical necessity due to a prior injury years before, Plaintiff does not actually contend that it was an urgent or emergency medical procedure at the time the appointment was scheduled.

Also on March 30, 2004, the same day authorization was requested by Dr. Daniel, UHA undisputedly faxed to Dr. Daniel a letter stating the following:

13

> Please be informed that <u>your request for prior authorization is pending additional supporting documentation to establish medical necessity</u>. Please note that cosmetic procedures are not a covered benefit.

(UHA CSOF ¶ 6; CSOF Ex. D; Pl. Resp. ¶ 6 (emphasis added).)  On April 6, 2004, Dr. Daniel provided UHA with a history, examination, diagnosis, and medical records.  (UHA CSOF Ex. E; Pl. Resp. ¶ 7.)  This information was provided only three days before the scheduled surgery.

According to UHA, on April 7, 2004, Plaintiff called UHA and was informed that UHA requires two weeks notification for non-emergency, non-urgent out-of-state surgical procedures.  (UHA CSOF Ex. F.)  Plaintiff disputes that she was informed of the two week notification period.  (Simms Opp'n Decl. ¶¶ 6-8.)  Plaintiff contends that the person she spoke with seemed uninformed about the authorization and told Plaintiff only that she would return her call before the surgery.  (<u>Id.</u> ¶ 7.)

On April 9, 2004, the day of the surgery, UHA sent Dr. Daniel another letter with UHA's decision in bold and boxed-text, stating: "<u>Pending review of medical necessity</u> with referring physician and availability of requested procedure in the service area of Hawaii."  (UHA CSOF Ex. G (emphasis added).)  Plaintiff argues that the letter was sent "almost certainly after the surgery had begun."

14

(Opp'n at 9.)  Plaintiff nevertheless went forward with the surgery on April 9, 2004.

On April 13, 2004, UHA notified Plaintiff that her request for septoplasty was denied.  (UHA CSOF Ex. H.)  The reason for the denial was that it was "not a covered benefit" and that "[c]osmetic procedures also not [sic] a covered benefit."  (Id.)

III.   Decision by UHA Appeals Committee

On June 10, 2004, Plaintiff appealed the denial.  (UHA CSOF Ex. I.) On July 12, 2004, UHA's Appeals Committee denied Plaintiff's appeal because Plaintiff had not complied with the prior authorization requirements:

> The Committee has considered the facts and uphold UHA's decision to deny payment.  We find no need to argue the medical necessity of the procedure in question.  We base our decision on the fact that Prior Authorization requirements had not been complied with:  Your benefit plan specifies that non-emergency services outside Hawaii must be precertified with UHA at least two weeks in advance (Page 41, Medical Benefits Guide, attached).
>
> No such timely action was taken.  Request for authorization was first made on 3/30/04.  In the days following, verbal communication was made to you by UHA's Care Management Department reminding you of the two week provision and that authorization was yet still pending. You proceeded to obtain the septoplasty on 4/9/04 without such authorization.  UHA therefore denies payment.

(UHA CSOF Ex. J (emphasis added).)

15

On April 12, 2005, Plaintiff again appealed.  (UHA CSOF Ex. K.)  In the appeal, Plaintiff's counsel argued that even failure to obtain pre-authorization does not result in outright denial, instead, the penalty is "payment as non-participating provider."  (Id. at 1.)  On July 7, 2005, counsel for UHA sent Plaintiff's counsel a response letter which indicated that UHA had revised its decision and would pay the eligible charge at Non-Participating Provider levels.  (UHA CSOF Ex. L.)  The letter stated:

> [A]s your letter indicates, the remedy for failing to obtain two week prior-authorization is payment for the service at Non-Participating Provider levels.  The Eligible Charge for the services at issue at Non-Participating provider levels is $1,641.05.  Ms. Simms' co-payment for services received from Non-Participating Providers is 20% of the Eligible Charge, or $328.21. . . . UHA will thus pay the sum of $1,312.84 to Ms. Simms, that being the Eligible Charge less her co-payment.

(Id. at 2.)  A check in the amount of $1,312.84 was included.  (Id.)

The method by which UHA calculated the reimbursement amount is undisputed.  Dr. Daniel's claim was calculated at 105% of the 2001 Medicare fee schedule for the same procedures.  (UHA CSOF ¶ 18; CSOF Ex. N, O, P, R; Pl. Resp. ¶ 18.)

On September 29, 2006, Plaintiff once again disputed the amount of UHA's reimbursement.  (UHA CSOF Ex. Q.)  Plaintiff's counsel complained that

the amount of reimbursement was less than 4% of the actual charges.  The record

indicates that Plaintiff was charged in the amounts of $12,495 and $23, 325 by Dr.

Daniel and the Surgery Center, respectively.  (UHA CSOF Ex. Q.)

On October 24, 2006, UHA paid an additional $2,592 as payment for

the Surgery Center's services, which had been "inadvertently not processed" at the

time Plaintiff was reimbursed for Dr. Daniel's services.[4]  (Mot. at 8; UHA CSOF ¶

20; Pl. Resp. ¶ 20.)  The method of calculating this reimbursement is also

undisputed.  The eligible charge was based on the charges negotiated with a

contracted hospital in Hawai`i for the same procedures and services.  (UHA CSOF

¶ 21; Pl. Resp. ¶ 21.)

III.  <u>Analysis of Abuse of Discretion in Setting Reimbursement at Non-Participating Provider Rates</u>

The issue now before this Court is whether the UHA Appeals

Committee abused its discretion in reimbursing Plaintiff at Non-Participating

Provider rates, and in setting the amount Plaintiff was reimbursed.  Because there

is an inherent structural conflict of interest in UHA's position as both administrator

---

[4] On January 5, 2009, Plaintiff sent a letter to counsel for UHA requesting reimbursement for a second surgery purportedly scheduled for April 2009.  (Opp'n at 12.)  In Plaintiff's Opposition, however, Plaintiff expressly abandons this particular claim and recognizes that her coverage had terminated long before.  (Pl. Resp. ¶ 22.)  The Court will therefore not address the April 2009 surgery.

and as the payor of benefits, this Court will apply the more "complex" abuse of discretion standard.  <u>Montour</u>, 588 F.3d at 629-30.

 According to UHA, the "amount UHA paid to Plaintiff for the surgery was based on her failure to comply with the unambiguous prior authorization requirements of the health plan, which required that prior authorization be requested two weeks prior to any non-emergency, non-urgent surgery to be performed outside of the Service Area for the UHA plan."  (Mot. at 2.)  Because Plaintiff failed to meet the requirement, UHA "paid for the surgery based on its discretionary determination of 'eligible charges' for Non-Participating Providers." (<u>Id.</u>)  UHA denies that it exercised unfettered discretion when setting those eligible charges, and maintains that the charges are based on the Medicare fee schedule and payment methodologies and the charges UHA pays to contracted providers in Hawai`i for similar services.  (<u>Id.</u>)

 Plaintiff primarily argues that UHA has disingenuously switched its reasons for denying Plaintiff's insurance claims from the position that Plaintiff's septoplasty was a cosmetic procedure and not a covered benefit to the position that Plaintiff failed to timely file a preauthorization request two weeks in advance of

the procedure.[5]  Plaintiff further contends that whether Plaintiff filed the

preauthorization request on time is a moot issue because UHA did give Plaintiff

authorization for the surgery in the April 9, 2004 letter faxed to Dr. Daniel, "even

if conditionally."  (Pl. Reply ¶ 9.)

> The Court is unpersuaded by Plaintiff's arguments.  First, the issue

now before this Court is whether UHA abused its discretion in setting the Non-

Participating Provider rate, not whether UHA abused its discretion in originally

denying Plaintiff reimbursement.  As recounted above, the Appeals Committee

reversed its earlier decision to entirely deny Plaintiff reimbursement and did

ultimately reimburse Plaintiff, albeit at lower rates than Plaintiff desires.

_____

[5] Plaintiff appears to suggest that this purported switch should result in a de novo review of the administrative decision as opposed to an abuse of discretion review.  (Opp'n at 4-7.)  The case Plaintiff cites for this proposition, Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc., 125 F.3d 794 (9th Cir. 1997), relies on another case that has since been overruled, Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317 (9th Cir. 1995), overruled by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006). Plaintiff incorrectly applies the standard as set out in Lang, because Plaintiff ignores UHA's ability to rebut a presumption that there was an actual conflict of interest or that the conflict actually affected the outcome.  Moreover, even if this Court were to engage in a de novo review, Plaintiff has not identified any particular aspects of the benefit plan, or provided any additional evidence, to support her claims that there either was bias or that she actually received pre-authorization.  Plaintiff's remaining arguments about the standard of review are difficult to discern.  Accordingly, this Court will apply the standard of review as described herein.

Second, despite Plaintiff's insistence to the contrary, UHA did not give Plaintiff authorization for the surgery in the April 9, 2004 letter sent to Dr. Daniel.  That April 9, 2004 letter stated that the decision was "Pending review of medical necessity with referring physician and availability of requested procedure in the service area of Hawaii."  (UHA CSOF Ex. G (emphasis added).)  It is perplexing to this Court why Plaintiff maintains that "pending review" meant that the surgery was approved.  Any common understanding of the word "pending" indicates that the opposite was true.  The Oxford English Dictionary defines "pending" as "remaining undecided, awaiting decision or settlement."  XI The Oxford English Dictionary 468 (2nd ed. 2001).  "Pending" is defined by Black's Law Dictionary as "throughout the continuance of; during; while awaiting; until." Black's Law Dictionary 1248 (9th ed. 2009).  Moreover, according to Plaintiff, she had not even seen the April 9, 2004 letter until after the surgery, effectively admitting that she did not wait for a decision from UHA before going forward with the surgery.  (Opp'n at 9.)

The gravamen of Plaintiff's opposition rests on her contention that the April 9, 2004 letter authorized the surgery, which it quite clearly did not.  As to the matter before the Court, Plaintiff has not provided any evidence or even argument

that the values decided upon by UHA in accordance with the Non-Participating

Provider rates was an abuse of discretion.

Moreover, any estoppel arguments that Plaintiff may be raising by

virtue of her purported reliance on the communications from UHA staff are

unavailing.  UHA argues that an estoppel argument fails as a matter of law in

ERISA claims.  This Court need not reach that issue, as the Court concludes that

even if it were to entertain an estoppel argument, Plaintiff would not prevail.

Plaintiff's primary estoppel argument is that UHA's supposed failure to return her

phone call before the surgery amounted to approval, upon which she relied.  This is

patently unreasonable.  Having received a prior communication that her application

was "pending review," it is unreasonable for Plaintiff to have considered a lack of

further response as indicative of approval.  The Court noted at the hearing that

nowhere in the record does UHA at any time represent or suggest that a lack of

response from UHA would indicate approval of the surgery.  Further, the flurry of

communication that Plaintiff attempts to characterize as somehow fraud or

incompetence on the part of UHA can be attributed in part to the late request made

by Plaintiff and the even later response by Dr. Daniel.  It is clear from the record

that UHA staff were responding with reasonable speed considering the

circumstances and UHA's need to conduct due-diligence when responding to a pre-authorization request.

The Court concludes that UHA's reimbursement to Plaintiff based on its computation of Non-Participating Provider rates was not an abuse of discretion, even considering the inherent structural conflict. There is quite simply nothing in the record indicating that UHA did anything other than provide Plaintiff reimbursement according to the policy in the MBG outlined above. The decision to reimburse based on Non-Participating Provider rates was made because Plaintiff did not follow the MBG's requirement to contact UHA "at least 2 weeks in advance." (CSOF Ex. W at 41.) That ruling itself did not involve any discretionary decision making as to the value or necessity of the underlying treatment. Plaintiff simply failed to abide by an explicit term of the plan. Furthermore, as outlined above, a number of correspondences passed between Plaintiff's counsel and UHA, in which UHA explained the reasoning behind the reimbursement.

UHA did not construe the plan's provisions in a way that conflicts with the plain language of the plan. The plan requires prior authorization for "non-emergency or non-urgent services outside Hawaii." (Id.) If someone wishes to receive a service involving non-emergency or non-urgent services outside Hawaii,

that person is required to contact UHA "at least 2 weeks in advance." (Id.) The penalty for not receiving pre-authorization is payment only at the "Non-Participating Provider" rate. (Id.) UHA will pay 80% of the eligible charge for Non-Participating Providers. (Id. at 2.) UHA determines the eligible charge, and the MBG gives UHA the discretion to do so (Id. at 4, 9.)

Plaintiff does not dispute the time line of events, or the existence of the correspondences attached to UHA's motion, and in fact relies solely on the very same evidence relied upon by UHA. The only difference between UHA's position and Plaintiff's position is Plaintiff's presumption that the April 9, 2004 letter constituted approval, which this Court has already deemed unreasonable. There is significantly more than a "modicum of evidence in the record supporting the administrator's decision." Montour, 588 F.3d at 626.

The remaining issue is whether UHA's determination of the value of the eligible charge was an abuse of discretion. On this matter Plaintiff has complained only that the eligible charge was much less than the actual charge. (UHA CSOF Ex. Q.) Plaintiff does not, however, provide this Court with any argument or evidence upon which this Court may conclude that the value, alone, indicates an abuse of discretion. Plaintiff did not raise this matter at the hearing, and has submitted no meaningful argument on this issue. UHA has provided

undisputed information indicating that the value was derived from established Medicare values and  comparison with comparable Hawai`i rates.  The eligible charge therefore does not appear to have been set in an arbitrary or capricious manner, and there is no evidence that the value was set due to any animosity toward Plaintiff or due to any inherent conflict of interest.

Accordingly, the Court concludes that UHA did not abuse its discretion, and UHA's motion for summary judgment is GRANTED.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS UHA's Motion for Summary Judgment and STRIKES Plaintiff's unauthorized supplemental briefing.

The Clerk of the Court is hereby directed to enter judgment in favor of Defendant UHA.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 27, 2010.



_____
David Alan Ezra
United States District Judge

<u>Simms v. University Health Alliance, et al.</u>, CV No. 09-00295 DAE-KSC; ORDER GRANTING UHA'S MOTION FOR SUMMARY JUDGMENT AND STRIKING PLAINTIFF'S UNAUTHORIZED SUPPLEMENTAL BRIEFING